UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE ESTATE OF THOMAS SAUICKIE, JR., by its administratrix ad prosequendum, TRACIE J. ORR, TRACIE J. ORR, individually, and CHLOE SAUICKIE, by her g/a/l, TRACIE J. ORR,

        Plaintiffs,

– against –

CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, FIRE DEPARTMENT OF THE CITY OF NEW YORK, FIRE DEPARTMENT OF NEW YORK CITY EMERGENCY MEDICAL SERVICES, MOISES M. CLASE, CARIDAD A. CLASE, JOHN DOES (1–5), and ABC CORP. (1–5),

        Defendants.

**OPINION AND ORDER**

17 Civ. 2662 (ER)

Ramos, D.J.:

  The Estate of Thomas Sauickie, Jr., Tracie J. Orr, individually and as administratrix ad prosequendum of the Estate, and Chloe Sauickie, by her guardian ad litem Tracie J. Orr (collectively, "Plaintiffs"), bring this diversity action against the City of New York, the New York City Police Department ("NYPD"), the Fire Department of the City of New York, the Fire Department of New York City Emergency Medical Services (collectively, the "City Defendants"), Moises M. Clase, and Caridad A. Clase (collectively, the "Clase Defendants"). Plaintiffs allege that the City Defendants were negligent in failing to respond to the scene of a motor vehicle accident involving Plaintiffs, which resulted in the death of Thomas Sauickie, Jr. The City Defendants have moved to dismiss the First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the City Defendants' motion to dismiss is GRANTED.

I.   **Factual and Procedural Background**[1]

On January 21, 2016, at approximately 5:00 p.m., Thomas Sauickie, Jr., his wife Tracie J. Orr, and their daughter Chloe Sauickie were traveling in their car on the FDR Drive near East 42nd Street in New York City when they were involved in an automobile accident with another car. FAC ¶¶ 5–6, 14–15, Doc. 45. Between 5:00 p.m. and 7:27 p.m., Plaintiffs placed multiple calls to the NYPD requesting immediate assistance "due to [Plaintiffs'] being stopped in a dangerous location." *Id.* ¶¶ 16, 28. In each call, Plaintiffs notified the NYPD of their location on the FDR Drive and that they needed assistance to "get out of harm's way due to the dangerous location they were in on the FDR Drive." *Id.* ¶ 31. The operator "advised and promised . . . on multiple occasions that NYPD would respond to the scene of the accident." *Id.* ¶ 17.

Plaintiffs waited for approximately two hours or longer, but the NYPD did not respond to the scene. *Id.* ¶ 19. Plaintiffs were "unable to continue to wait in the same location due to the danger they were in." *Id.* Thomas Sauickie then saw an NYPD officer stationed across the FDR Drive and crossed the FDR Drive to talk to him. *Id.* ¶ 20. The FAC alleges, upon information and belief, that Sauickie informed the officer of the accident, the NYPD's failure to respond, and Plaintiffs' location, and the officer agreed to "some form of assistance." *Id.* ¶¶ 20, 38. Sauickie then "was allowed" to cross the FDR Drive back to his vehicle. *Id.* ¶ 20. On his way back across the FDR Drive, Sauickie was struck by a car owned by Defendants Moises M. Clase and Caridad A. Clase at approximately 7:27 p.m. *Id.* ¶ 21. Tracie Orr and Chloe Sauickie "were in direct proximity to" and witnessed this accident. *Id.* ¶ 22. Sauickie died from his injuries the following day, January 22, 2016. *Id.* ¶ 23.

---

[1] The following facts are drawn from the allegations in the FAC, which the Court accepts as true for purposes of the instant motion to dismiss. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Plaintiffs filed their original Complaint on April 13, 2017.  Doc. 2.  Plaintiffs then filed the FAC on August 29, 2017, asserting the following claims against all Defendants:  (1) negligence; (2) wrongful death, on behalf of the Estate of Thomas Sauickie, Jr.; (3) negligent infliction of emotional distress, on behalf of Tracie J. Orr and Chloe Sauickie; and (4) survival action for injuries on behalf of the Estate.  FAC ¶¶ 24–61.  The City Defendants moved to dismiss the FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 5, 2017.  Doc. 50.  Both Plaintiffs and the Clase Defendants oppose the City Defendants' motion to dismiss.  *See* Pls.' Opp. Mem., Doc. 57; Clase Defs.' Opp. Mem., Doc. 56.

## II.     Legal Standard

### A.     Standard Under Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff

has not "nudged [his] claims . . . across the line from conceivable to plausible," the complaint must be dismissed. *Id.* at 680 (citing *Twombly*, 550 U.S. at 570).

      **B.**      **Matters Outside the Pleadings**

On a motion to dismiss pursuant to Rule 12(b)(6), the Court is generally only required to look at the allegations on the face of the complaint. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The Court may consider documents other than the complaint if the documents are "attached to the complaint or incorporated in it by reference" and "deemed part of the pleading." *Id.* If matters outside the pleadings are presented with a Rule 12(b)(6) motion, the Court has the option to either "'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Willing v. Suffolk Cty. Dep't. of Soc. Servs.*, 09 Civ. 5285 (ADS) (ETB), 2010 U.S. Dist. LEXIS 68908, at *4 (E.D.N.Y. July 8, 2010) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)).

Here, the City Defendants annexed to their Rule 12(b)(6) motion papers a transcript of Tracie J. Orr's testimony at a hearing held on June 29, 2016, pursuant to New York General Municipal Law § 50-h ("50-h testimony").[2] *See* Beck Decl. Ex. C, Doc. 51. The City Defendants relied on parts of the testimony as additional support for their motion to dismiss. *See* City Defs.' Mem. ¶ 4, Doc. 53; City Defs.' Reply Mem. ¶ 8, Doc. 58. However, courts in this circuit typically decline to consider 50-h testimony submitted by defendants when ruling on a Rule 12(b)(6) motion. *See, e.g.*, *Fontanez v. Skepple*, 12 Civ. 1582 (ER), 2013 U.S. Dist. LEXIS

---

[2] *See generally* N.Y. Gen. Mun. Law § 50-h (McKinney 2018) ("Wherever a notice of claim is filed against a city . . . the city . . . shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made, which examination shall be upon oral questions unless the parties otherwise stipulate and may include a physical examination of the claimant by a duly qualified physician.").

4

31720, at *5–7 (S.D.N.Y. Mar. 6, 2013) (declining to consider the 50-h testimony proffered by the defendant when ruling on the defendant's Rule 12(b)(6) motion), *aff'd*, 563 F. App'x 847 (2d Cir. 2014); *Aguilera v. County of Nassau*, 425 F. Supp. 2d 320, 322–23 (E.D.N.Y. 2006) (declining to consider 50-h testimony on a Rule 12(b)(6) motion where the plaintiff did not "incorporate his 50-h testimony by reference in the complaint" or "attach[] the transcript to the complaint, in whole or in part"). Accordingly, the Court will not consider Orr's 50-h testimony in ruling on the City Defendants' Rule 12(b)(6) motion.

### III. DISCUSSION

As a general rule, a municipality cannot be held liable for ordinary negligence as a result of its performance of a governmental function unless it owed a "special duty" to the injured party. *Applewhite v. Accuhealth, Inc.*, 995 N.E.2d 131, 133 (N.Y. 2013). Police and fire protection has long been recognized as quintessential governmental functions. *Id.* at 134. In order to plead a prima facie case of ordinary negligence against the City Defendants in this case, Plaintiffs must allege sufficient factual matter for this Court to draw reasonable inferences that (1) the City Defendants established a special relationship with Plaintiffs, (2) the City Defendants breached their special duty, and (3) the City Defendants' breach of the special duty was the actual and proximate cause of the death of Sauickie. *See Duguay v. City of New York*, 861 F. Supp. 2d 236, 245 (S.D.N.Y. 2012) ("To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006))).

A municipality establishes a special relationship with a plaintiff when there is "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on

5

behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Cuffy v. City of New York*, 505 N.E.2d 937, 940 (N.Y. 1987).

Plaintiffs correctly state that "[w]hether a special relationship exists is generally a question for the jury." *Coleson v. City of New York*, 24 N.E.3d 1074, 1079 (N.Y. 2014); *see* Pls.' Opp. Mem. 6. However, courts have granted Rule 12(b)(6) motions when the plaintiff fails to allege or provide the factual predicate for a special relationship in the complaint. *Gross v. City of Albany*, 14 Civ. 0736, 2015 U.S. Dist. LEXIS 130678, at *31–32 (N.D.N.Y. Sept. 29, 2015) (citing *Blackstock v. Bd. of Educ.*, 921 N.Y.S.2d 858 (App. Div. 1st Dep't 2011)). Accordingly, the Court must assess whether Plaintiffs have pleaded sufficient factual matter supporting each of the four elements of a special relationship to state a facially plausible claim to relief.

Plaintiffs allege that the City Defendants established a special relationship with them both through the 911 calls and through the conversation between Sauickie and the NYPD officer on the opposite side of the FDR Drive. FAC ¶¶ 36–40. Defendants argue that under either theory, Plaintiffs have failed to plead facially plausible claims that a special relationship existed between the City Defendants and Plaintiffs. City Defs.' Mem. ¶¶ 9, 18.

A.  **Plaintiffs' Claims Against the City Defendants Based on the 911 Calls**

With regards to the first element of a special relationship, Plaintiffs allege that the 911 operator "specifically advised and promised . . . on multiple occasions that NYPD would respond to the scene of the accident." FAC ¶ 17. Plaintiffs argue that such assurances constituted a voluntary assumption of an affirmative duty to respond to the scene. Pls.' Opp. Mem. 9. Plaintiffs cite to *De Long v. Erie County*, 457 N.E.2d 717 (N.Y. 1983), where the New York

6

Court of Appeals, following a jury trial, held the county defendant liable for failing to respond to a burglary after the 911 operator promised to send help "right away" and the burglar subsequently killed the caller. *Id.* at 721–22; *see* Pls.' Opp. Mem. 12. In response, Defendants argue that the FAC lacks specific representations of when the NYPD would be sent to the scene. City Defs.' Mem. ¶ 14. They cite to three cases where the court granted summary judgment to defendants on the basis that their vague responses to requests for help did not constitute a voluntary assumption of an affirmative duty. *Id.* ¶¶ 12–13 (citing *Damato v. City of New York*, 06 Civ. 3030 (DC), 2008 U.S. Dist. LEXIS 39142 (S.D.N.Y. May 12, 2008); *Dinardo v. City of New York*, 921 N.E.2d 585 (N.Y. 2009); *Brown v. City of New York*, 902 N.Y.S.2d 594 (App. Div. 2d Dep't 2010)).

In analyzing whether certain interactions constitute a voluntary assumption of an affirmative duty, the explicit content of conversations between the injured parties and the defendants and the context surrounding the conversations are critical. In *De Long*, a woman reported an active burglary through a 911 call and was explicitly promised that the police would come "right away" upon her urgent request. *De Long*, 457 N.E.2d at 719. The promise in *De Long* was clear regarding who would respond, what they would respond to, the location where they would respond, and when they would respond. Such a clear promise is distinguishable from vague statements that have been held to not give rise to a special relationship, such as a supervisor's telling the plaintiff to "hang in there" because "something was being done" and "things were happening," *Dinardo*, 921 N.E.2d at 586, a police officer's stating that he was "going to take care of it," *Brown*, 902 N.Y.S.2d 594 at 596, or an officer's promise to keep a car in the area for an unspecified amount of time and to respond to future 911 calls, *Damato*, 2008 U.S. Dist. LEXIS 39142, at *10.

Here, accepting the factual allegations in the FAC as true, Plaintiffs told the 911 operator that they needed immediate assistance. FAC ¶ 16. In response, the 911 operator "promised" only that the "NYPD would respond to the scene of the accident," not when they would do so. *Id.* ¶¶ 17–18. This promise is distinguishable from the one in *De Long*, where the 911 operator promised to send help "right away." *De Long*, 457 N.E.2d at 719. Without specifying when the NYPD would respond to the 911 call, the 911 operator merely promised to fulfill an obligation owed to the public at large, and did not voluntarily undertake an affirmative duty to act on behalf of Plaintiffs. *See Damato*, 2008 U.S. Dist. LEXIS 39142, at *10–11 (holding that responding to a 911 call is an obligation owed to the public at large and that an assurance to perform a basic police function is not a voluntary assumption of affirmative duty). Although Plaintiffs are not required to quote the operator verbatim or provide every exact detail of the conversation to survive a motion to dismiss, the Court cannot reasonably infer, from the 911 operator's alleged promises that the "NYPD would respond to the scene of the accident," that the City Defendants voluntarily undertook an affirmative duty to act on behalf of Plaintiffs. FAC ¶ 17.

Even assuming the City Defendants undertook an affirmative duty to respond to the scene of the accident, Plaintiffs fail to plausibly allege that the City Defendants knew that failing to respond would cause harm to Sauickie. In order to fulfill this second element that the City Defendants knew or should have known that their inaction would lead to harm, Plaintiffs must sufficiently allege that the City Defendants were "clearly on notice of palpable danger . . . so obvious that a layman would ascertain it without inquiry." *Kovit v. Estate of Hallmus*, 829 N.E.2d 1188, 1192 (N.Y. 2005), *abrogated on other grounds by McLean v. City of New York*, 905 N.E.2d 1167 (N.Y. 2009). The court in *Kovit* held that during the plaintiff's interaction with the police officer, neither his explanation that he had chest pain and was not feeling well nor his

appearance gave the police officer notice that instructing the plaintiff to remove his car from the shoulder of the expressway could cause him to crash the car and suffer severe injuries as a result. *Id.* at 1192. Likewise, the court in *Sciortino v. Leo*, 876 N.Y.S.2d 308 (App. Div. 4th Dep't 2009), granted summary judgment to the defendants on the grounds that the plaintiff failed to mention the immediate danger of being assaulted in his call to the police department and failed to offer evidence indicating that the call operator should have known about this danger. *Id.* at 309–10. Here, Plaintiffs simply allege that the "NYPD was specifically notified of the dangerous location Plaintiffs were remaining at on the FDR Drive." FAC ¶ 16. Plaintiffs do not allege that they ever notified the 911 operator that Sauickie would cross the FDR Drive or communicated any information indicating that the operator should have known he would do so. In their opposition, Plaintiffs argue that they were "stranded on FDR Drive, with nowhere to go for safety," but they have not explained why crossing the FDR Drive was safer than waiting in their vehicle for the NYPD to arrive, nor have they alleged that the 911 operator knew of such an explanation. Pls.' Opp. Mem. 13. It is implausible that by simply learning about their location on the FDR Drive, the 911 operator knew or should have known that not responding to the scene in two hours would cause Sauickie to cross the FDR Drive, twice, and be struck by a car while crossing. Simply describing the location of their vehicle as a "dangerous location" is not sufficient to establish a facially plausible claim that the 911 operator knew that the NYPD's inaction would cause Plaintiffs the harm alleged here.

Regarding the fourth element, Plaintiffs fail to allege sufficient facts for this Court to reasonably infer that Sauickie justifiably relied on the City Defendants' promise to respond to the scene. This element must provide the "essential causative link" between the special duty assumed by the City Defendants and the death of Sauickie. *Cuffy*, 505 N.E.2d at 940. To satisfy

9

this element, Plaintiffs must sufficiently allege that the assurance "actually lulled [them] into a false sense of security, induced [them] either to relax [their] own vigilance or forego other avenues of protection, and thereby placed [them] in a worse position than [they] would have been had the City never assumed the duty." *Brown*, 902 N.Y.S.2d at 596 (citing *Conde v. City of New York*, 808 N.Y.S.2d 347, 348 (App. Div. 2d Dep't 2005)). Such allegations are absent from the FAC. Plaintiffs contend that they justifiably relied on the 911 operator's promise by "first remaining in their vehicle on the FDR Drive and thereafter seeking out another NYPD officer for help across the FDR Drive." FAC ¶ 40. But if Plaintiffs had in fact relied on the operator's assurances that help would be sent, they would have waited for such help. Instead, the FAC plainly acknowledges that Sauickie chose not to continue waiting for the NYPD to arrive, and instead crossed the FDR Drive. FAC ¶ 20. When the injured party acts in contradiction to what he has been promised, such action is not in reliance on the promise. *See Barnes v. State*, 66 N.Y.S.3d 716, 718 (App. Div. 3d Dep't 2017) (finding no justifiable reliance when the decedent drove himself home after being told by the police officer to wait for his brother to give him a ride home); *Cockburn v. City of New York*, 10 N.Y.S.3d 630, 631–33 (App. Div. 2d Dep't 2015) (finding no justifiable reliance where the plaintiff drove the injured party to the hospital without calling emergency services again after being told to monitor the condition and call back if the condition changed). The Court therefore cannot reasonably infer that Sauickie's decision to cross the FDR Drive was the result of justifiable reliance on the 911 operator's promise to respond to the scene, rather than his own initiative that was at odds with the operator's alleged promise.

### B. Plaintiffs' Claims Against the City Defendants Based on Sauickie's Conversation with the Unknown Police Officer

Plaintiffs also allege that the unknown NYPD officer on the other side of the FDR Drive was negligent in "allowing" Sauickie to cross back over the FDR Drive. FAC ¶¶ 20, 37–40. Plaintiffs allege that the police officer agreed to "some form of assistance" and that Sauickie "was allowed to cross back over the FDR to his vehicle." FAC ¶¶ 20, 38. However, "[t]he assurance by the municipal defendant must be definite enough to generate justifiable reliance by the plaintiff." *Dinardo*, 921 N.E.2d at 587. Plaintiffs have not alleged any facts showing that the officer promised to help Sauickie safely return to his vehicle across the FDR Drive. The allegations that the officer "allowed" Sauickie to cross and promised "some form of assistance" are too vague for the Court to reasonably infer that the NYPD officer offered any specific promises to Sauickie. Plaintiffs fail to allege any facts beyond pure speculation that the NYPD officer voluntarily assumed an affirmative duty to act on their behalf. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").[3]

Since the Court cannot reasonably infer from the factual allegations in the FAC that the NYPD officer voluntarily assumed an affirmative duty to assist Sauickie, the Court need not address whether Plaintiffs have plausibly alleged the other *Cuffy* elements as to the officer.

### C. Derivative Claims

As explained above, Plaintiffs' claim that the City Defendants were negligent is not facially plausible and must be dismissed. Since Plaintiffs' remaining claims for wrongful death,

---

[3] Even assuming that the NYPD officer specifically instructed Sauickie to cross back over the FDR Drive, courts have held that the police's directing traffic is a discretionary function. *Denis v. Town of Haverstraw*, 852 F. Supp. 2d 405, 414 (S.D.N.Y. 2012). A municipality cannot be held liable for injuries arising from its exercise of a discretionary function regardless of the existence of a special relationship. *Id.* at 412–13.

negligent infliction of emotional distress, and survival action are dependent on the alleged negligence, *see* FAC ¶¶ 48, 51, 54, 56, 60–61, these claims against the City Defendants must be dismissed as well.

## IV. Amendment

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 191 (2d Cir. 2015) (reaffirming the "liberal spirit" of Rule 15 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011))). Although Plaintiffs have amended their Complaint once, the amendment was not in the context of a Rule 12(b)(6) motion, and the Court therefore did not provide guidance as to how their claims may be adequately pleaded. As it is not clear that any further opportunity to amend would be futile, the Court dismisses Plaintiffs' claims against the City Defendants without prejudice.

## V. Conclusion

For the reasons set forth above, the City Defendants' motion to dismiss pursuant to Rule 12(b)(6) is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 50. Plaintiffs may file a second amended complaint, if at all, on or before **July 30, 2018**.

Dated: June 29, 2018
New York, New York

Edgardo Ramos, U.S.D.J.